## WRIGHT *vs.* LAKE.

75  219
101  211

Where a duly commissioned pilot for the port of Brunswick tendered his services to a master of a vessel outside of the bar to bring his vessel into port, which were declined, and the master brought his own vessel into port, paying the pilot the fees allowed if he had brought in the vessel, and thereupon the pilot tendered his services to the master to take the vessel out of port, which were declined, and the master refused to pay the pilot the fees allowed for such services, the pilot was entitled to recover therefor; and where the commissioners of pilotage rendered a judgment in his favor, it was error to reverse this judgment on *certiorari.*

(*a.*) The pilotage acts are founded on public necessity for the security of commerce and the protection of life, and it is not apparent why an outward bound vessel should not have the protection of a skillful and experienced pilot, as well as one inward bound.

(*b.*) This case differs in its facts from those of *Thompson vs. Spraigue, Soulle & Co.,* 69 *Ga.,* 409, and *Meissner vs. Stein,* 72 *Ga.,* 234. The points directly involved in those cases do not control this, and what may have been said in the opinions *arguendo* is to be considered alone with reference to the facts of those particular cases, and is not binding as a decision where the facts are different.

January 26, 1886.

Public Policy. Pilotage. *Obiter Dictum.* Before Judge ADAMS. Glynn Superior Court. May Term, 1885.

Reported in the decision.

SPENCER R. ATKINSON, for plaintiff in error.

GOODYEAR & KAY; CHISHOLM & ERWIN, for defendant.

BLANDFORD, Justice.

Wright sued Lake, as master of a certain vessel, before the commissioners of pilotage, and obtained a judgment upon this state of facts : Wright was a duly commissioned pilot for the port of Brunswick. He had tendered his services to Lake outside of the bar to bring his vessel into port. Lake declined the services of the pilot, and brought in his vessel himself. He paid the pilot the fees he would have been allowed if he had brought the vessel into port. Wright then tendered his services to the master to take the vessel out of port. This the master declined, and refused to pay the pilot the fees allowed for such services.

A writ of *certiorari* having been sued out to the judgment of the commissioners of pilotage, the *certiorari* was sustained, and the judgment set aside. This ruling of the superior court is excepted to, and error assigned thereon.

The act of 1799 (Cobb's Digest, page 37) declares, "All vessels entering and clearing within this state shall pay the several rates of pilotage, if a licensed pilot is offered." The tenth section gives the preference to the pilot bringing in the ship to carry the same out.

These acts of pilotage are founded on public necessity, for the security of commerce and the protection of life. We cannot well see why a vessel outward bound should not have the protection of a skillful and experienced pilot as well as one inward bound ; the law of prudence and necessity is the same in either case, and the statute declares, " that all vessels entering and clearing within this state shall pay the several rates of pilotage, if a licensed pilot is offered." Thus the law is written.

No case precisely like this has ever been before this court. Counsel for defendant insists that the decision in the case of *Thompson vs. Spraigue, Soulle & Co.*, 69 *Ga.*, 409, is in point, and rules the case at bar. We do not think so. That was a case in which Thompson, a pilot, offered his services to the commander of a vessel outside of the bar

at Savannah first, and they were declined, and afterwards another pilot was taken on board, and he brought the vessel into port. Thompson sued for the pilotage of the vessel, as fixed by the commissioners of pilotage. This court held, Jackson, Chief Justice, delivering the opinion, that under sections 1512 and 1517 of the Code, the defendants were liable; that the pilot first offering his services, and who was refused, upon the arrival of the vessel in port, could recover the full rates of pilotage established by law for such vessel; and this is all that was decided in that case. While there is much said, by way of argument, as to the policy of the law, what is quoted embraces the points decided, and there is no conflict between that case and the case at bar; they are entirely dissimilar. The case of *Meissner vs. Stein*, 72 *Ga.*, 234, is also relied on to sustain the ruling of the court below. The pilot had brought in a British ship, the Termagant, which was sold under a decree in admiralty, and thereafter was rebuilt, and stood out to sea as an American vessel. This was her first trip from a home port under her new name and nationality. All that was decided in that case is, that the purchaser took, under the decree, the property sold, free from all liens, and that the pilot could not recover under the facts of that case, which are essentially different from the facts in the case now under consideration. A judgment upon a similar state of facts is binding, but the argument of a judge, pronouncing an opinion upon a different state of facts, however much the argument may appear to fit the facts of the case being considered, is not binding as a decision. What is said in an opinion is to be considered alone, with reference to the facts of that particular case, and as applying thereto. We do not think that anything said in the two cases referred to controls this case. So we think the court erred in overruling the judgment of the commissioners and rendering judgment in favor of Lake.

Judgment reversed.